IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Ronnie Shaw and Laura Ann Shaw, | ) | Civil Action No. ___2:26-cv-00888-RMG___ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| State Farm Fire & Casualty Company, | ) | **COMPLAINT** |
| Morgan Stanley Capital Holdings, LLC, | ) | |
| and Selene Finance, L.P. and Selene | ) | |
| Finance, L.P. as attorney in fact for FV-1 | ) | |
| In trust for Morgan Stanley Capital | ) | |
| Holdings, LLC, and John Doe as Trustee of | ) | |
| FV-1 trust, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiffs above-named, complaining of the Defendants herein, would respectfully show unto this Honorable Court as follows:

**THE PARTIES**

1.     Plaintiffs, Ronnie Shaw and Laura Ann Shaw, are citizens and residents of the County of Berkeley, City of Charleston, State of South Carolina, residing on St. Thomas Island, South Carolina.

2.     Defendant, State Farm Fire & Casualty Company, ["SF"] is a Stock Company, with its principal place of business [Home Offices] in Bloomington, Illinois and it is incorporated in the State of Illinois.

3.     Defendant, Morgan Stanley Capital Holdings, LLC, [Defendant MS] is a limited liability company.  Upon information and belief, its principal place of business is in the City of

New York, or Dallas, Texas, and it is incorporated in the State of New York. MS's address for service of process is 3501 Olympus Blvd, Suite 500, Dallas, Texas 75019.

4.     Defendant Selene Finance, L.P. ["Selene"] is a Delaware limited partnership with its principal place of business being in Dallas, Texas. It is "attorney in fact for FV-1 in trust for Morgan Stanley Capital Holdings, LLC" ["FV1"].

5.     The FV-1 trust is not a transparent entity. It is named as a Defendant using the limited information that appears from the public record revealing the identity of which entity apparently owns, by a string of assignments, the mortgage on Plaintiffs' Home. The name of the trustee for FV-1 does not appear of record. Therefore, John Doe is named as trustee until the name of the trustee can be identified. Upon information and belief, said trustee is Selene's principal. Selene's address and FV-1's address for service of process is 3501 Olympus Blvd, Suite 500, Dallas, Texas 75019.

## JURISDICTIONAL ALLEGATIONS

6.     This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1332, in that there exists diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000, excluding interest and costs.

7.     Under the *Erie* doctrine and its progeny this Court is to apply state substantive law and federal procedural law to this diversity jurisdiction case.

8.     Venue is proper in this Division pursuant to 28 U.S.C.§1391, since this Division is where a substantial part of the events occurred and the claims involve real property [an insured Home] located in this Division.

## SUBJECT-MATTER OF ACTION

9.      Generally stated, this civil action alleges claims for: (a) expedited declaratory relief to (i) declare by judgment the legal meaning of S.C. Code §38-75-20 (1976, as amended), which South Carolina ["SC"] law states in pertinent part that: "In the case of total loss by fire the insured is entitled to recover ***the full amount of insurance***" (the "Stated Value" law) and to (ii) declare by judgment the legal meaning of SF Homeowners Policy Number 40-BG-3315-8, Form HW-2140, **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, Paragraph A Valuation Clause**, [the "Stated Value" clause. A Stated Value law and a Stated Value clause each require an insurer to pay a pre-determined, fixed amount for a total loss of insured property] and also Plaintiffs plan to move to thereafter bifurcate the determination of liability and damages by a jury in connection with Plaintiffs' claims against SF for: (b) breach of contract; and (c) bad faith refusal to pay first party insurance benefits arising out of SF's failure to pay Plaintiffs the Stated Value of the Dwelling coverage as required by the SC law and as required by the Stated Value clause of Plaintiffs Homeowners Policy, and related claims arising out of SF's breaches and other unreasonable actions in the processing of Plaintiffs insurance claims, made after Plaintiffs Home and its contents were totally destroyed in an accidental fire on March 4, 2023.

10.     This action also alleges claims for:  (a) expedited declaratory relief to:  (i) declare by judgment the legal meaning of S.C. Code §38-75-20 (1976, as amended), which South Carolina ["SC"] law states in pertinent part that: "In the case of total loss by fire the insured is entitled to recover ***the full amount of insurance***" (the "Stated Value" law) and to (ii) declare by judgment the legal meaning of SF Homeowners Policy Number 40-BG-3315-8, Form HW-2140, **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, Paragraph A Valuation Clause**, [the "Stated Value" clause.  A Stated Value law and a Stated Value clause each require an

insurer to pay a pre-determined, fixed amount for a total loss of insured property] and (iii) to declare by judgment the legal meaning of SF Homeowners Policy Number 40-BG-3315-8, Form HW-2140, **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, Paragraph A Valuation Clause**, and <u>**SECTION 1 CONDITIONS, Paragraph 10 b**</u> [which is the **Mortgage Clause** that requires SF to pay the loss payee even if it denies the insured's claim] as such declaration is material with respect to the Plaintiffs claims against MS, Selene and FV-1 for (a) rescission; and for (b) negligence; and (c) conversion which claims all arise out of MS, Selene and FV-1's failure to properly handle the total fire loss to the Home collateral insurance claim and their failure to properly handle Plaintiffs insurance proceeds from the total fire loss which they undertook to control as successor in interest to the named loss payee by assignment. The reason the two preceding claims appear duplicative is that SF *separately contracted* with insureds and the Mortgagee in the standard form Homeowners Policy, HW-2140.

11.     Plaintiff plans to promptly file a Motion to expedite a hearing and a ruling on Plaintiffs' claims for declaratory relief and to bifurcate the subsequent determination of liability and damages which Motion will be fully supported by *<u>Plaintiffs' Memorandum of Law in Support of Motion to Expedite Declaratory Relief and to Bifurcate for Later Determination of Liability and Damages by a Jury</u>*, which Motion will be filed in the Docket after the filing of this Summons and Complaint, and which will be served on Defendants. Plaintiff intends to consult with SF with respect to the requested expedited declaratory relief post-filing by way of a letter directed to Susan Hopson, the assigned SF Fire Claim Specialist, and by letter to SF's local claims investigation counsel David Cleveland, Esquire. Plaintiff plans to consult with MS, Selene and FV-1 with respect to the requested expedited declaratory relief post-filing by way of a letter directed to its assigned outside legal counsel, M. McMullen Taylor. This prompt post-filing consultation will be done so

4

in the event the Court decides to expedite decision on these very narrow points of law, the Court would know Plaintiffs have given Defendants maximum advance notice under the circumstances.

12.     The basis for Plaintiffs motion to expedite is that Plaintiffs will lose their substantially rebuilt Home in a foreclosure sale brought about by the misconduct of SF, MS, Selene and FV-1, as more particularly described below, which foreclosure sale is set to take place on **April 1, 2026.**

13.     Bifurcation is requested as, *if* the Court declares the meaning of the SC Stated Value law and the meaning of the Policy Stated Value clause, SF will either decide it is in its best interest to pay the full amount of the Dwelling coverage for the total fire loss of the Dwelling as required by the Stated Value law and by its own standardized Homeowners Policy Form HW-2140 with the Stated Value clause, or not.  It is anticipated SF would make said voluntary Dwelling coverage payment (without condition of a policy release or a release of all claims) rather than double down on its then obvious statutory violation and breach of contract.

## SPECIFIC FACTUAL ALLEGATIONS

14.     The Policy Declarations state the "Property Coverage and Limits for the Dwelling, Limit of Liability is $1,295,100."

15.     Coverage A – Dwelling Extension Limit is $129,510 (outbuildings, fencing, etc.).

16.     Plaintiff had $1,295,100 in Dwelling coverage.

17.     The sum of $1,295,100 is the Stated Value of Plaintiffs' Dwelling Coverage which SF refers to as its "Limit of Liability" in the Declarations.

18.     Plaintiff's premium was based on a Dwelling coverage limit of $1,295,100 which premium amount and coverage limit was determined by SF, and both of which automatically increased each year, at time of automatic policy renewal.

19.     The premium in the sum of $8,235 per annum was paid in full at the time of the loss.

20.     Plaintiffs were classified by SF as "loyal customers." As a result, SF represented, Plaintiffs were given a "discount" on their Homeowners Policy premiums for their customer loyalty.

21.     Plaintiffs own their Residence Premises [the "Home"] as joint tenants with right of survivorship, and not as tenants in common.

22.     The Home is a single-family residential dwelling located at the street address of 1019 Victoria Road, Wando, South Carolina. There are other structures on the Property. The Home is on land legally identified as T.M.S. #275-00-00-072, designated as Lot 1-A on a plat of the lands of Earl Shaw. The Home is in the County of Berkeley, City of Charleston, State of South Carolina.

23.     The Home was constructed on land that had been in the Shaw family since the Civil War Era. It did not come into the ownership of the Shaw Family easily. Quite fortunately over many years, they were able to hold on to their land ownership, pay the increasingly high property taxes and build and insure very nice family homes, on Victoria Road (named in honor of a special family member). The Shaws still have their family land and homes - on an island in the Daniel Island area, which at one-time was owned almost entirely by Henry Frank Guggenheim (American businessman, diplomat and philanthropist) as his private hunting retreat and cattle ranch. This area is now almost fully gentrified. The patriarch of the Shaw family was April Shaw. April Shaw's grave site is located in the shadows of *Credit One Stadium* on Daniel Island. April Shaw was a Pvt from SC in a segregated unit in the US Army in World War I. He raised his family on this land. April's son Earl Shaw and his wife Rosa Shaw, had ten (10) sons, Earl Percy Alston, Kirkland Shaw, Timothy Shaw, Melvin Shaw, Virgil Shaw, Rodney Shaw, Plaintiff Ronnie Shaw, Robert

Lee Shaw, Terry April Shaw, and Kevin Jermain Shaw, many of whom proudly live on Victoria Road on their family land. They have held on to this family land come hell or high water. In fact, when well-heeled developers try to buy some of it, they are told it is <u>not</u> for sale at any price because it is where they hold on to the memories and legacy of their grandfather April Shaw.

24.     Plaintiffs first purchased SF Homeowners insurance through agent Gene Murray in about 1994 on an automatic renewal basis.

25.     After several years, Plaintiffs earned what they were told was a Loyal Customer discount on their premium, which went up every year like the coming of Spring.

26.     At renewal, SF would determine and inform Plaintiffs of the amount of the annual premium and they paid it religiously.

27.     At renewal, SF would determine and inform Plaintiff of the coverage limits.

28.     SF regularly did property inspections a purpose of which was to validate computer generated Stated Value Dwelling coverage limits of liability. SF performed inspections as documented by photographs at and inside Plaintiffs home on 1/12/23 and 6/18/22.

29.     State Farm uses its Xactware / Xactimate software program to estimate property damage. Xactimate is biased against insureds in favor of the insurance industry.

30.     Rosa Shaw is the matriarch of the Shaw family. Rosa Shaw was the progenitor of ten (10) children, all sons. Rosa Shaw is 90 years of age. Rosa Shaw lived in her very nice and comfortable suite in the Home with Plaintiffs, had a lifetime of memories and all her personal and irreplaceable sentimental effects destroyed in the fire. She has been displaced since March 4, 2023, when the family Home was destroyed in an accidental fire.

31.     Plaintiffs insured their residence premises for the policy term February 20, 2023, to February 20, 2024, under Homeowners Policy 40-BG-3315-8, standardized form HW-2140, [the

"SF Homeowners Policy" or the "Policy"] a Certified Policy Record of which, along with its Declarations page, is attached hereto and incorporated herein by reference as **Exhibit "A"**.

32.     Plaintiffs originally mortgaged their Home to World Savings Bank ["Plaintiffs' Mortgage"].   It has been assigned several times over the years.

33.     Plaintiffs' Mortgage was ultimately assigned and transferred to Defendant Morgan Stanley Capital Holdings, LLC ["MS"] on October 17, 2024.   Upon information and belief, presently it may be owned by FV-1 in trust by MS.

34.     Selene Finance, L.P. is the current servicer of Plaintiffs' Mortgage and attorney in fact for Defendant MS in that respect.   This legal structure is intended to conceal the name of the trustee of FV-1 from the public record.

35.     On March 4, 2023, the Home was destroyed by an accidental fire [the Fire] rendering it a total loss.

36.     The cause of the Fire was believed to be an unintentional electrical arcing from an unspecified short – circuit in an electrical outlet in the master bedroom.

37.     By form letter from SF dated March 5, 2023, Plaintiffs were advised "We received a report of a loss involving your State Farm policy number 40-BG-3315-8.  A member of our team, Susan Hopson, will review your coverage and get your claim moving through the process…"

38.     Susan Graves Hopson's ["Hopson"] title is SF Fire Claim Specialist.   Upon information and belief, Hopson currently holds an SC property and casualty adjuster's license originally effective August 13, 1999 and the professional designation AIC.

39.     Upon information and belief, Hopson received substantial training from SF before she became a SF Fire Claim Specialist and before she was assigned to "review…coverage" and handle the adjustment of fire claims.

40.     Hopson was awarded the designation of Associate in Claims ("AIC). In the insurance industry an associate in claims designation signifies specialized training and skills in the handling of various types of claims. An AIC is a professional certification for insurance claims adjusters conferred by the Insurance Institute of America.

41.     On March 6, 2023, SF made an advance payment of Coverage B – Personal Property in the amount of $3,000 to Plaintiffs.

42.     On March 8, 2023, SF made an advance payment of Coverage B – Personal Property in the amount of $10,000 to Plaintiffs.

43.     By letter dated March 8, 2023, from SF Fire Claim Specialist Hopson, Plaintiffs were advised: "Your Coverage A – Dwelling Limit is $1,298,985.00/ Coverage A – Dwelling Extension Limit is $129,899 (outbuildings, fencing, etc.). We are preparing an estimate for the repairs to your home. Your deductible of $12,951.00 will be applied to the total amount of the claim. If you would like State Farm to consider a contractor's estimate, we ask you submit the contractor's estimate for our review as soon as it is available. Your claim under Coverage A – Dwelling, may be paid on an actual cash value basis. Actual cash value means the value of the damaged part of the property at time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. Under the provisions of your Homeowners policy, replacement cost benefits may apply. To make a claim for replacement cost benefits, you must repair or replace the damaged property by 3/4/2025. Our records indicate your mortgage company is Rushmore Loan Management Services, LLC Isaoa Atima. Under the Section 1 – Conditions of your policy, we are required to include their name on any Coverage A payments. We recommend you contact your mortgage company to determine their requirements for handling

these payments.  Your Coverage B – Personal Property limit is $974,239.  . . . Your Coverage C – Loss of Use is $389,696".

44.        S.C. Code Ann. §38-75-20 (1976, as amended), is an SC state law that states, in pertinent part, that "In the case of total loss by fire the insured is entitled to recover ***the full amount of insurance.***"  This type of law is called a Stated Value Law or a Valued Policy Law, which type of law is very common in the property and casualty insurance industry.

45.        Approximately 20 to 25 states have enacted Stated Value laws, (also called "Valued Policy laws – VPLs) which generally mandate that insurance companies pay the full-face value of a policy if a structure is deemed a total loss.  These laws prevent insurers from arguing the property was worth less than the insured amount after a casualty loss.

46.        By letter dated April 20, 2023, from Hopson, the assigned SF Fire Claim Specialist, to Plaintiffs then attorney M. Richard Hyman, Jr. advised: "As it relates to the structure, State Farm does not need the residence preserved any further.  State Farm does not object to the residence premises being demolished at this time if that is what the Shaws want to do.  This release of the building to be demolished should not be construed as a commitment by State Farm to make any payments per the terms of the policy.  The investigation of the claim is ongoing, but the evidence contained in the residence premises is no longer needed for the investigation.  If it is later determined that claim payments are owed, the reasonable cost of demolition and removal of the main residence premises would be considered . . . "

47.        Plaintiffs permitted SF to perform any and all forensic tests and examinations desired by SF following the loss and did not remove the ruins of their Home from their lands until they were expressly given permission by SF.

48.     The Home was rendered a total loss because of the accidental fire of March 4, 2023.

49.     **Exhibit "B"** is a photograph which fairly and accurately generally depicts the condition of the Home at the time of the fire on March 4, 2023.

50.     On April 27, 2023, SF issued payment number 1 27 856373 J with the REMARKS – Board up fees – and COVERAGE DESCRIPTION FIRE OR LIGHTNING – BUILDING ON BEHALF OF SHAW, RONNIE & LAURA ANN in the sum of $2,500.

51.     By email dated May 17, 2024, Hopson, the assigned Fire Claims Specialist, Plaintiffs were advised, in pertinent part, SF would be referring their file "to Attorney David Cleveland at Clawson and Staubes to make arrangements for Examination Under Oaths to further investigate and document the damages from the fire loss of 3/4/2023...SF is unable to extend the housing past current Lease ending 7/31/24."

52.     By email dated June 28, 2023 from Hopson, the assigned SF Fire Claims Specialist, Plaintiffs were advised, in pertinent part, SF will agree and cover the quoted monthly rent of $4,400 for a leased property provided the signed and executed lease is submitted to State Farm to document and confirm the leased address, terms of the lease and landlord/property manager where the rental payment should be mailed direct.

53.     On July 18, 2023, Plaintiffs leased a 2435 square foot home at 2428 Havana Street, Charleston, SC 29492, after confirmation by Susan H. Hopson that SF would directly pay the rent under the Homeowners Policy Loss of Use Coverage.   The term of the lease was from 7-22-23 until 7/31/24 at a rent of $4,415 per month.  The arrangement was SF would pay the monthly rental each month direct to Landlord's property manager.  This became a huge ordeal as SF had difficulty timely making the rental payments, to the point that on or about June 14, 2024, Plaintiffs came

home (with their grandchildren) to a Rule to Show Cause or Vacate (Eviction) notice taped to the door of the rental home by reason of SF having failed to pay $4,965 in rent. It took 5 months after the loss for the rental arrangement to be established because it took SF 5 months to approve a rental. SF only approved a 1-year rental as opposed to the 24 months provided for in the Policy.

54.     The Limit of Liability of Plaintiffs Loss of Use coverage was $388,530.

55.     By letter dated July 20, 2023, from Hopson, the assigned SF Claim Specialist, Plaintiffs were advised, in pertinent part: "Enclosed you will find a payment in the amount of $734,663.77. At this time, *we are paying your claim based on the cost of repairs with deduction for depreciation*." The letter also advised Plaintiffs "One of the provisions of your insurance policy is Replacement Cost Coverage. This coverage provides for payment of the actual, necessary cost of making repairs to your dwelling without any deduction for depreciation. However, your policy requires that repairs be completed before replacement benefits may be claimed. The enclosed Explanation of Building Replacement Cost Coverage form indicates an additional amount of $98,394.41 is available to you for replacement cost benefits and may be claimed upon completion of the repairs." Plaintiffs were also advised "The terms of the policy require your mortgage holder or lienholder be included as a payee on the payment enclosed. Since each mortgage company has different procedures for endorsing payments, we suggest you contact your mortgage company for instructions on how to obtain their endorsement."

56.     On July 20, 2023, SF issued payment number 1 27 07384 J to RONNIE SHAW, SR. & LAURA ANN SHAW & RUSHMORE LOAN MANAGEMENT SERVICES, LLC ISAOA ATIMA IN with the REMARKS **ACV of SF estimate less ded** and advance under COVERAGE DESCRIPTION FIRE OR LIGHTNING – BUILDING ON BEHALF OF SHAW, RONNIE &

LAURA ANN in the sum of $773,663.77. This draft was issued in error, as SF failed to deduct the prior demolition payment. As such, Plaintiffs did not negotiate this draft.

57.     Rushmore Loan Management Services, LLC was the **Mortgagee** named as the loss payee in the Homeowners Policy Number 40-BG-3315-9 Policy Declarations, which note premiums are "TO BE PAID BY MORTGAGEE." Its name was included on all drafts related to the Dwelling coverage.

58.     On July 20, 2023, SF issued payment number 1 27 073861 J with the REMARKS ACV of dwelling ext\out building repairs per SFE under COVERAGE DESCRIPTION FIRE OR LIGHTNING – BUILDING ON BEHALF OF RONNIE & LAURA ANN SHAW in the sum of $9,684.89.

**59.**     By letter dated July 25, 2023, from Hopson, the assigned SF Claim Specialist, Plaintiffs were advised, in pertinent part, that: <u>**in an effort to assist you after the total loss of your home and personal property in your recent loss**</u> (emphasis supplied), State Farm Fire and Casualty Company has agreed to provide an advance of your personal property limits of your State Farm Homeowners Policy. This advance will not require an inventory or documentation of your loss at this time...Per our agreement, to receive the advance on your personal property coverage, please complete and sign the enclosed attestation stating your belief that your personal property damages from your fire claim exceeds $194,847.80. Upon our receipt of this document, we will issue payment in the amount of $177,447.80 ($194,847.80 less $17,400 in paid advances to date). With this payment, State Farm's payment(s) for your contents claim represents 20% of your personal property limits...If you wish to submit a claim for an amount in excess of all advances made to date, please complete and submit the inventory forms previously provided by SF."

60.     On July 25, 2023, SF issued payment number 1 27 085356 J with the REMARKS *ACV per SFE* under coverage description FIRE OR LIGHTNING – BUILDING ON BEHALF OF SHAW, RONNIE & LAURA ANN in the sum of $734,663.77.

61.     SF left it up to Rushmore (who was no longer the mortgage holder at time of Dwelling coverage payment, but whose name was put on the SF draft, and Plaintiffs) to duke it out about how the jointly issued draft for the Dwelling coverage insurance proceeds money would be handled.

62.     SF owed the Mortgagee (which changed to MS, FV-1 investor after the loss) the Stated Value of the Dwelling coverage up to the amount owed on the mortgage at the time of the loss, as this was the extent of the Mortgagees insurable interest in the Dwelling) which mortgage balance was $1,066,136.61 as of 10/24/24, and such obligation was separately owed by SF to the Mortgagee, and it was owed regardless of if SF denied Plaintiffs claim (which, in any event, did not happen).   Therefore, within 60 days of the loss, SF should have tendered FV-1, MS - $1,066,136.61 at which time the Plaintiffs mortgage would have been satisfied and paid in full and any remaining SF payments would have been made by drafts issued with only Plaintiffs names on them.

63.     As a result of the "you duke it out" process used by SF, MS, Selene and LV-1 were able to lock those funds in a restricted account and then use and convert them to the detriment of Plaintiffs.

64.     After it seized control of the insurance proceeds, MS, Selene and LV-1 billed against the insurance proceeds (the approximate sum of $80,696.12) to continue to pursue foreclose on Plaintiffs home. Said foreclosure was filed by MS's predecessor, on January 25, 2023. MS, Selene and LV-1 then held the remainder of the insurance proceeds money and applied it to

loan payments that were not yet due, and a loan modification proposal that was never finalized, after it was discovered insurance proceeds had been converted. MS, Selene and FV-1 breached the bilateral settlement agreement under formation, which was rescinded and revoked by Plaintiffs in writing before SCRCP, Rule 43k procedures were complied with, -- after it was discovered $41,400 was missing from the MS, Selene, LV-1 accounting for the Insurance Proceeds held in the restricted account.

65.     MS attorneys' fees and costs from the foreclosure litigation were charged by MS, Selene and LV-1 against Plaintiffs.

66.     This turn of events essentially left Plaintiffs, who were trying to rebuild their home, with no say in the matter and with none of their insurance proceeds.

67.     MS, Selene and FV-1 were to account to Plaintiffs for their use of the insurance proceeds and deliver to Plaintiff all remaining insurance proceeds within 30 days of October 28, 2024, which they failed to do.

68.     On March 6, 2025, due to such non-performance by MS, Selene, FV-1 acceptance of the loan modification under discussion was revoked in writing.

69.     On April 15, 2025, MS, Selene and FV-1 tendered a check dated March 28, 2025, in the sum of $54,659 which was stated to be Plaintiffs share of the $744,348.66 in insurance proceeds held hostage by MS, Selene and FV-1. This tender shorted Plaintiff considerable funds (approximately $41,400 at least). Plaintiffs rejected and returned the tendered check to Selene's legal counsel without negotiating it.

70.     Thereafter, negotiations between Plaintiff, Selene and FV-1 to resolve the handling of the insurance proceeds and modify the mortgage fell apart, leaving the foreclosure action

previously filed by MS's predecessor in interest (which mortgage had been sold and resold between opaque investors) still pending.

71.    SF is a national company with a book value of $142.2 billion dollars.

72.    The legal predicaments Plaintiffs' face were proximately caused by SF's violation of the Stated Value law and breach of the stated value clause and breach of the Mortgagee clause.

73.    On August 14, 2023, SF issued payment number 1 27 135976 J with the Remarks "ACV of SF estimate" with a COVERAGE DESCRIPTION of FIRE OR LIGHTNING – BUILDING ON BEHALF OF SHAW, RONNIE & LAURA ANN in the sum of $734,663.77.

74.    On August 14, 2023, SF issued payment 1 27 135983 J with the REMARKS ACV of dwelling unit ext\out building repairs per SF estimate under COVERAGE DESCRIPTION FIRE OR LIGHTNING – BUILDING ON BEHALF OF SHAW, RONNIE & LAURA ANN in the sum of $9,684.89.

75.    By letter dated January 29, 2024, from Hopson, the assigned SF Fire Claim Specialist, Plaintiffs were advised, in pertinent part: "Please be aware that your limit of liability for Loss of Use Coverage is $389,696.00.

76.    By letter dated February 16, 2024, from Hopson, the assigned SF Claim Specialist, Plaintiffs were advised, in pertinent part, that the letter was to follow up on the conversation with Plaintiffs' contractor, Ernie Kinloch of E&H Builders, who had submitted an estimate to rebuild Plaintiffs home at Ms. Hopson's suggestion.   "Initially, Mr. Kinloch advised SF the estimate was based on the new design and rebuild structure . . . SF's estimate was created based on personal inspections of the damaged structure, actual measurements and the MLS drawings. . . Please note the SF estimate was written with a scope for the damaged main structure not the replacement of the driveways, walkways, carport or detached garage as they had limited damage, if any."   "We

must also review the Additional Living Expense (ALE) coverage under your policy. Currently, the lease and ALE runs through 7/31/2024. SF issued payment for the structure 8/14/2023, so we are 6 months post payment. Please provide a copy of the issued building permit for the new structure so SF can determine if any additional living expenses will be approved and extension given. . .”

77.     SF adjusted Plaintiff's Dwelling coverage claim as an Actual Cash Value ["ACV"] claim based on an SFE ["State Farm Estimate"] - not handling Plaintiffs claim as a total loss Stated Value claim.

78.     SF prepared an estimate dated May 2, 2024 in which it estimated the total Actual Cash Value under Coverage A – Dwelling – 33 Fire, Lightning & Removal was $809,360.44; the SFE estimate determined Coverage A – Dwelling – 33 Fire & Lightning & Removal – Trees, Shrubs and Landscaping was $5,938.18; the SFE estimate determined the Coverage A – Dwelling Extension – 33 Fire & Lightning & Removal – was $9,840.811 the totals of the above being $825,139.53. The SF estimate ("SFE") was done using a computer program that is unfairly biased against insureds.

79.     On May 3, 2024, Plaintiffs engaged public adjuster ALEX N. SILL COMPANY, LLC to prepare, document and defend all contents claims under the Policy to include preparing a complete inventory of all damaged contents insured under the Policy and assigning proper values to each item of contents as required under the Policy. ALEX N. SILL COMPANY, LLC determined the [Contents Claim Estimate Grand Total] ACV loss to Plaintiffs contents was $802,799.70. This estimate was submitted to SF within two (2) years of the loss.

80.     By letter dated May 17, 2024, from Susan Hopson, the assigned SF Claim Specialist, Plaintiffs were advised, in pertinent part, that SF "requires your Examination Under

Oath to obtain information that is relevant and necessary to process of investigate your claim…
[a] copy of your claim file has been sent to David Cleveland at Clawson & Staubes, LLC…David
Cleveland will be contacting you in the near future to set a mutually convenient time for your
Examination Under Oath…".

81.     By letter dated October 18, 2024, from Hopson, the assigned SF Claim Specialist,
Plaintiffs were advised, in pertinent part: "As we discussed, we will need the following information
to evaluate and settle your claim:   Itemization of damage personal property, as follows:  A copy
of the Import Template has been sent to you to help with your recent loss…When template is
complete,   please   return   it   to   David   Cleveland   of   Clawson   &   Staubes   and
statefarmclaims@statefarm.com. Personal property is initially settled on an actual cash value basis
(replacement cost minus depreciation) until the item is replaced…".

82.     As of October 24, 2024, the payoff on Plaintiffs' Mortgage was $1,066,136.61, a
sum less than the SF Dwelling coverage of $1,295,100.

83.     Had SF complied with SC Stated Value law and the Homeowners Policy Plaintiffs
mortgage would have been satisfied in full as of that date.

84.     SF had a separate contractual obligation to pay MS as Mortgagee under the
Homeowners Policy Paragraph 10a which states that a denial of the insured Homeowners claim
**"will not apply to a valid claim of the mortgagee".**

85.     On November 15, 2024, SF gave Plaintiffs a NON-RENEWAL NOTICE stating,
in pertinent part, that their Homeowners Policy, set to expire February 20, 2025, will not be
renewed.   "This insurance coverage is no longer acceptable to State Farm Fire and Casualty
Company due to insufficient underwriting information.   Specifically, we need information
regarding the status of the dwelling after the March 4. 2023 Fire loss.   If this policy has

mortgagee(s) or additional interest(s), we are notifying them of our action. Because this letter is only a notice of cancellation, it will not disclose the above reason for our decision." From non-renewal forward, Plaintiffs were charged exorbitant forced placed insurance premiums on their mortgage, which as stated seriatim above, should have been satisfied and paid in full within 60 days from March 4, 2023.

86.     On November 21, 2024, Plaintiffs each gave their Examination Under Oath as requested by SF. All questions posed were answered under oath on the record.

87.     On February 20, 2025, Guy C. Lee Building Materials, LLC sued Plaintiffs and MS to foreclose on a mechanic's lien on the Home filed on December 11, 2024, claiming $306,625.75 was owed by Plaintiffs for materials supplied to rebuild the home after the total fire loss. The foreclosure action requests that the Home be sold and the proceeds be used to satisfy the debt of Plaintiffs to Guy C. Lee.

88.     On March 7, 2025, Plaintiffs and Defendants MS and Selene were unable to consummate an agreement with respect to the division of SF insurance proceeds in the sum of $744,348.66 being held by Defendants MS and Selene in a restricted account during their pending foreclosure litigation. This resulted in MS and Selene retaining those funds to the detriment of Plaintiffs. This resulted in legal difficulties pertaining to multiple mechanic's liens being placed on Plaintiffs home by subcontractors and material suppliers Plaintiff hired to rebuild their home in justifiable reliance on SF paying Plaintiffs on their Dwelling claim in accordance with the SC Stated Value law and the Homeowners Policy.

89.     On March 20, 2025, Cahill Contracting, LLC filed a Mechanic's Lien against Plaintiffs and MS placing a lien on the Home in the sum of $15,803.75 for materials and labor supplied to Plaintiffs relating to the rebuild of their Home.

90.     On March 28, 2025, Defendants MS and Selene attempted to tender $54,659.00 of the insurance proceeds to Plaintiff, which tender was rejected due to MS having shorted Plaintiffs. The tendered funds were returned to MS and Selene on January 6, 2026.   No binding and enforceable settlement with respect to the handling of the insurance proceeds exists as between Plaintiffs and MS/ Selene as of this date.

91.     On April 23, 2025, Pro Electric, Inc. sued Plaintiff and MS to foreclose a mechanic's lien filed January 29, 2025, in the amount of $24,000 for electrical work performed at the Home. The foreclosure action requests that the Home be sold and the proceeds used to pay Pro Electric.  A judgment of foreclosure has been entered by the Circuit Court for Berkeley County. The foreclosure sale date has been set for **April 1, 2026.**

92.     On May 1, 2025, Insulation by Cohen's, LLC sued Plaintiffs and MS to foreclose on a mechanic's lien filed March 5, 2025, on the Plaintiffs Home in the amount of $41,564.92 for insulation installed in the Plaintiffs' home. The foreclosure action requests the Home be sold and the proceeds be used to pay Insulation by Cohen's, LLC bill.

93.     On May 2, 2025, SF outside attorney David Cleveland requested that Plaintiffs appear at his office on June 4, 2025, to each give their second Examination Under Oath.

94.     On June 4, 2025, Plaintiffs each gave their second Examination Under Oath. Plaintiffs answer under oath all questions posed on the record.

95.     On October 2, 2025, SF determined that for Coverage B – Personal Property – 34 Fire, Lightning & Removal was estimated to total $462, 479.46 and that, less non-recoverable depreciation of $239,547.37, Plaintiffs were entitled to $222,932.09, and less the previously advanced payment of $194,847.80, the amount due Plaintiffs was $28,084.29.

96.    The Limit of Liability of Personal Property coverage in the Plaintiff's Homeowner's Policy was $971,325.  Plaintiffs claimed to be owed $802,799.70.

97.    On October 8, 2025, SF issued payment 1 27 182616 J to public adjuster ALEX N. SILL COMPANY with the REMARKS ACV balance for contents worksheet 10/2/25 with a COVERAGE DESCRIPTION FIRE OR LIGHTNING – PERSONAL PROPERTY ON BEHALF OF SHAW, RONNIE & LAURA ANN in the sum of $28,084.29.  This was the last payment SF made to Plaintiffs under the Homeowners Policy.

98.    Plaintiffs fully cooperated with SF in the claims process.

99.    SF paid Plaintiffs' claims after determining they were covered, in the amount SF determined was correct under SC law and the terms of the Homeowners Policy and then SF closed its file on this matter.

100.    Plaintiffs did not sign a policy release or a general release in exchange for any payment made by SF to Plaintiffs.

## FOR A FIRST CAUSE OF ACTION
(Declaratory Judgment)

101.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

102.    Plaintiffs seek expedited declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act (28 U.S.C. §2201) as follows:

(i)    For the Court to expeditiously declare by judgment the legal meaning of S.C. Code §38-75-20 (1976, as amended), which South Carolina ["SC"] law states in pertinent part that: "In the case of total loss by fire the insured is entitled to recover ***the full amount of insurance***" (the "Stated Value" law); and

(ii)    For the Court to expeditiously declare by judgment the legal meaning of SF Homeowners Policy Number 40-BG-3315-8, Form HW-2140, **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, Paragraph A**

**Valuation Clause**, [the "Stated Value" clause. A Stated Value law and a Stated Value clause each require an insurer to pay a pre-determined, fixed amount for a total loss of insured property]; and

(iii)    For the Court to bifurcate the determination of liability and damages by a jury in connection with Plaintiffs claims against SF for: (a) breach of contract; and (b) bad faith refusal to pay first party insurance benefits arising out of SF's failure to pay Plaintiffs the Stated Value of the Dwelling coverage as required by the SC law and as required by the Stated Value clause of Plaintiffs Homeowners Policy and related claims arising out of SF's breaches and other unreasonable actions in the processing of Plaintiffs insurance claims made after Plaintiffs Home and its contents were totally destroyed in an accidental fire on March 4, 2023; and

As to the Mortgagee Clause contained in the Homeowners Policy,

(iv)    For the Court to expeditiously declare by judgment the legal meaning of S.C. Code §38-75-20 (1976, as amended), which South Carolina ["SC"] law states in pertinent part that: "In the case of total loss by fire the insured is entitled to recover ***the full amount of insurance***" (the "Stated Value" law); and

(v)    For the Court to declare by judgment the legal meaning of SF Homeowners Policy Number 40-BG-3315-8, Form HW-2140, **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, Paragraph A Valuation Clause**, [the "Stated Value" clause. A Stated Value law and a Stated Value clause each require an insurer to pay a pre-determined, fixed amount for a total loss of insured property]; and

(vi)    For the Court to declare by judgment the legal meaning of SF Homeowners Policy Number 40-BG-3315-8, Form HW-2140, **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, Paragraph A Valuation Clause**, and <u>**SECTION 1 CONDITIONS, Paragraph 10 b**</u> [which is the **Mortgage Clause** that requires SF to pay the loss payee even if it denies the insured's claim) as such declaration is material with respect to the Plaintiffs claims against MS, Selene and FV-1 for (a) rescission; (b) conversion and (c) negligence; which claims all arise out of MS, Selene and FV-1's failure to properly handle the total fire loss to the Home collateral insurance claim and their failure to properly handle Plaintiffs insurance proceeds from the total fire loss which they undertook to control as successor in interest to the named loss payee by assignment;

103.    Plaintiffs are entitled to the declaratory relief requested in this First Cause of Action as it would have preclusive effect on this lawsuit which would be imminent and it would afford specific relief through a decree of conclusive character.

## FOR A SECOND CAUSE OF ACTION
(Breach of SF Homeowner's Policy)

104.     Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as

if set forth herein verbatim.

105.     SF breached the Homeowners Policy by:

(i) By failing to comply with S.C. Code §38-75-20 (1976, as amended), which South
Carolina ["SC"] law states in pertinent part that: "In the case of total loss by fire the
insured is entitled to recover ***the full amount of insurance***" (the "Stated Value" law),
and

(ii)     By failing to pay Plaintiffs total Dwelling loss claim as required by SF Homeowners
Policy Number 40-BG-3315-8, Form HW-2140, **SECTION I – PROPERTY
COVERAGES, COVERAGE A – DWELLING, Paragraph A Valuation
Clause**, [the "Stated Value" clause. A Stated Value law and a Stated Value clause
each require an insurer to pay a pre-determined, fixed amount for a total loss of
insured property] in the sum of $1,295,100; and

(iii)    By failing to pay Plaintiffs Mortgagee pursuant to SF Homeowners Policy Number
40-BG-3315-8, Form HW-2140, **SECTION I – PROPERTY COVERAGES,
COVERAGE A – DWELLING, Paragraph A Valuation Clause**, and **SECTION
1 CONDITIONS, Paragraph 10 b** [which is the **Mortgage Clause** that requires
SF to pay the loss payee up to the amount of its insurable interest in the insured
collateral, even if it denies the insured's claim) within 60 days of the loss; and

(iv)     By failing to pay Plaintiffs pursuant to SF Homeowners Policy Number 40-BG-
3315-8, Form HW-2140, **SECTION I – PROPERTY COVERAGES,
COVERAGE B – PERSONAL PROPERTY,** up to the limits of liability of
$971,325; and

(v)      By failing to pay Increased Dwelling coverage up to $259,020 under Option ID;
and

(vi)     By failing to pay pursuant to SF Homeowners Policy Number 40-BG-3315-8, Form
HW-2140, **SECTION I – PROPERTY COVERAGES, COVERAGE C – LOSS
OF USE,** up to $388,530; and

(vii)    By applying the ACV loss settlement provision to a total loss by the casualty of fire.

106.     Plaintiff are entitled to recover actual damages, pre-judgment interest at the legal

rate, in such amount to be determined by the trier of fact as to the First Cause of Action.

107.    Plaintiff is entitled to recover reasonable attorney's fees and costs pursuant to S.C. Code Ann. §38-59-40 (1976) in an amount equal to one-third of the amount of the judgment.

**FOR A THIRD CAUSE OF ACTION**
(Bad Faith Refusal to Pay First Party Insurance Benefits)

108.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

109.    SF refused to pay first-party insurance benefits under a contract of insurance as alleged in the Second Cause of Action against SF for breach of contract in multiple particulars.

110.    SF Homeowners Policy Number 40-BG-3315-8 was a mutually binding contract of insurance between Plaintiffs and Defendant.

111.    SF refused to pay benefits due under the contract to Plaintiffs.

112.    SF failure to pay resulted from SF's bad faith or unreasonable action in breach of the covenant of good faith and fair dealing arising on the contract.

113.    Said bad faith and unreasonable action caused damage to the Plaintiffs.

114.    SF acted in bad faith as there was no reasonable basis for SF's refusal to pay the Stated Value / limits of liability of the Dwelling coverage to Plaintiffs.

115.    SF acted in bad faith in the way in which it processed Plaintiffs claims, particularly where SF failed to pay the policy limit for the dwelling coverage to Plaintiffs; and in the following bad faith and unreasonable actions, to wit:

(a) If failing to pay the Stated Value / limit of liability of the dwelling coverage for a total loss by fire; and

(b) In adjusting the dwelling coverage on an actual cash value basis rather than paying the limits of liability of the Dwelling coverage; and,

(c) In failing to pay the approved loss of use coverage on time, resulting in Plaintiffs being given a notice of eviction; and,

(d) In failing to pay the loss of use coverage for the duration provided for in the Homeowners Policy; and,

(e) In failing to pay Plaintiffs' contents claim; and,

(f) In using a biased software program to adjust Plaintiffs claims; and,

(g) In failing to timely pay Plaintiffs claims; and,

(h) In failing to comply with the Mortgagee clause and thereby satisfy Plaintiffs Mortgage within 60 days of the loss; and,

(i) In failing to timely pay Plaintiffs contents claim; and,

(j) In failing to immediately correct the statutory violation of failure to comply with the Stated Value law once served with this lawsuit requiring Plaintiffs to incur attorney's fees and costs to enforce clear insurance law; and,

(k) In failing to train its adjusters to comply with Stated Value laws; and,

(l) In failing to set up its claims software in a way in which if a total loss by fire is entered – the adjuster is cued to pay the limits of liability; and

(m) In making misrepresentations to the Plaintiffs in connection with adjusting their claim;

(n) In creating form letters to adjust claims in a manner that violated the law;

(o) In using a software program that is biased against insureds to adjust claims;

(p) In delaying the payment of Plaintiffs' legitimate claims;

(q) In unreasonable delay in paying legitimate claims.

(r) In the processing of the claim in general.

(s) In the failure to act as a reasonable and prudent national insurance company would act in the same or similar circumstances.

(t) In the use of policy forms or endorsements not approved for use in South Carolina.

**ALL** of which were a direct and proximate cause of the injuries, damages and losses to Plaintiffs herein, in violation of the statutes, regulations and laws of the State of South Carolina in such cases made and provided.

116.    Plaintiff is entitled to recover consequential damages, actual damages not limited by contract and punitive damages in an amount to be determined by the trier of fact.

117.    SF acted willfully and recklessly in failing to pay Plaintiffs claims entitling Plaintiff to recover punitive damages in an amount to be determined by the trier of fact.

118.    Plaintiff is entitled to recover reasonable attorney's fees and costs pursuant to S.C. Code Ann. §38-59-40 (1976) in an amount equal to one-third of the amount of the judgment.

## FOR A FOURTH CAUSE OF ACTION
(Recission)

119.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

120.    MS, Selene, FV-1, took control of Plaintiffs' Dwelling coverage insurance proceeds (in the amount of $744,348.66) following the total loss of Plaintiffs' Home by fire, without having signed a policy release or general release with SF, under the mistaken belief that said amount was the total amount of Dwelling coverage payable under Plaintiffs Homeowners Policy.

121.    SF hid crucial information from MS, Selene and FV-1 about the true amount payable under the Stated Value law by the manner in which it illegally adjusted the loss as an actual cash value claim.

122.     As a result, the acceptance, if any, by MS, Selene and FV of the SF payment, should

be revoked and any payment to the loss payee should be rescinded.

123.     Defendants MS, Selene and FV-1 should be ordered to return the insurance

proceeds mistakenly received and misapplied by them and SF should be ordered to re-issue

a draft for the dwelling coverage with Plaintiffs and their undersigned legal counsel's name

on it and deliver it to Plaintiffs' counsel to put Plaintiffs in a position to negotiate the

allocation of said insurance proceeds as between Plaintiffs and the said Defendants.

### FOR A FIFTH CAUSE OF ACTION
(Conversion against MS, Selene and FV-1)

124.     Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as

if set forth herein verbatim.

125.     Plaintiffs had the right to ownership and/or the right to possession of the insurance

proceeds from the fire loss.

126.     Defendants MS, Selene, FV-1 engaged in wrongful, intentional or unauthorized acts

of dominion or control over the insurance proceeds from the fire loss.

127.     Defendants MS, Selene and FV-1 converted and unlawfully interfered with

Plaintiffs' ownership of and right to control insurance proceeds from the fire loss and

converted them.

128.     Plaintiffs are entitled to recover actual and punitive damages against Defendants

MS, Selene and FV-1 for the intentional tort of conversion in an amount to be determined

by the trier of fact.

### FOR A SIXTH CAUSE OF ACTION
(Negligence against MS, Selene and FV-1)

129.     Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

130.     Defendants MS, Selene and FV-1 were negligent, willful, wanton, reckless and careless in the manner in which they serviced Plaintiffs mortgage, in the following particulars, to wit:

    (a) In failing to review the applicable provision of the Homeowner's Policy mandated by Plaintiffs mortgage to determine the coverage related to the collateral.

    (b) In failing to timely provide Plaintiffs with its insurance proceeds to rebuild the collateral;

    (c) In servicing the loan for the benefit of an investor in disregard of the interests of Plaintiffs;

    (d) In paying loan costs to the investor and otherwise operating their servicing company with the Plaintiffs insurance proceeds; and

    (e) In failing to service the mortgage loan in compliance with industry customs and standards.

**ALL** in violation of the laws, regulations and statutes of the State of South Carolina, in such cases made and provided.

131.     Plaintiffs are entitled to recover actual damages, punitive damages, attorney's fees and costs as to the Sixth Cause of Action.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

    (A)     As to the First Cause of Action for expedited declaratory judgment rulings, for declaratory judgments against Defendant SF as requested in the body of the Complaint; and,

    (B)     As to the Second Cause of Action for breach of contract for judgment against Defendant SF in an amount of actual damages to be determined by the trier of fact; and,

    (C)     As to the third cause of action for bad faith refusal to pay first party insurance benefits against State Farm, in an amount of consequential damages, actual

damages not limited by the insurance contract, and punitive damages to be determined by the trier of fact, and attorney's fees to be awarded by the Court; and

(D)    As to the Fourth Cause of Action for rescission of the payment of the insurance proceeds to Defendants MS, Selene and FV-1, along with an order they return all insurance proceeds they received to SF, that any draft reissued by SF be issued and delivered to the Plaintiffs and their undersigned counsel, to include MS as loss payee, for the purpose of negotiations between the loss payee and Plaintiffs to allocate the insurance proceeds between said competing insured interests; and

(E)    As to the Fifth Cause of Action for conversion for judgment against Defendants MS, Selene and FV-1 in an amount of actual damages and punitive damages to be determined by the trier of fact; and,

(F)    As to the Sixth Cause of Action for judgment against Defendants MS, Selene and FV-1 for negligence  in an amount of actual damages and punitive damages in an amount to be determined by the trier of fact; and,

(G)    For attorneys' fees, costs and disbursements to be assessed by the Court as to each cause of action; and,

(H)    For a trial by jury as to all causes of action *except* those for declaratory judgment.

(I)    For such other and further relief as this Court deems just and proper.

Respectfully submitted,

**THE MASON LAW FIRM, P.A.**

BY: s/*Mark A. Mason*
Mark A. Mason (Fed Bar ID 3325)
Anthony E. Forsberg (Fed Bar ID 6962)
Salah H. Hibri (Fed Bar ID 11556)
Tidewatch Centre on Shem Creek
465 W. Coleman Boulevard, Suite 302
Post Office Box 1271 (ZIP: 29465)
Mount Pleasant, SC 29464
Telephone: (843) 884-1444
Facsimile: (843) 884-3595
E-mail: mark@masonlawfirm.com
E-mail: aforsberg@masonlawfirm.com
E-mail: salah@masonlawfirm.com
*Attorneys for Plaintiffs Ronnie Shaw &*
*Laura Ann Shaw*

Mount Pleasant, South Carolina
March 3, 2026